**SPRINGS INDUSTRIES, INC., Plaintiff,**

v.

**Anthony GASSON and Joseph Santarlasci, Defendants.**

**Civ. A. No. 6:95–3567–20.**

United States District Court,
D. South Carolina,
Greenville Division.

April 16, 1996.

Michael J. Giese, Greenville, SC, for plaintiff.

Walker Duvall Spruill, Columbia, SC, for defendant Gasson.

James D. Brice and Ronald K. Wray, II, Greenville, SC, for defendant Santarlasci.

## ORDER

HERLONG, District Judge.

This matter is before the court on the motion of the defendant, Joseph Santarlasci ("Santarlasci"), to dismiss for lack of person-

al jurisdiction. The plaintiff, Springs Industries, Inc. ("Springs"), filed a memorandum in opposition to the motion to dismiss. Santarlasci has filed a reply memorandum.

In its memorandum in opposition, Springs alleges that Santarlasci and the other defendant, Anthony Gasson ("Gasson"), are the owners and managing agents of various corporations which have operated a garment manufacturing business in South Carolina. Springs was a supplier of piece goods to two of these corporations, New Swirl, Inc. ("New Swirl") and NIC Textiles Corp. ("NIC Textiles"). Initially, Springs supplied piece goods to New Swirl. New Swirl accumulated indebtedness to Springs in the amount of three hundred thousand dollars ($300,000). Santarlasci and Gasson created another corporation named NIC Textiles, of which they were the only two shareholders, directors, and officers. Springs contends that Gasson, as a representative of NIC Textiles, induced Springs to supply piece goods to NIC Textiles on the promise that it would pay the pre-existing debt of New Swirl. After NIC Textiles incurred a debt of eighty-seven thousand dollars ($87,000) to Springs and refused to pay off New Swirl's account, Springs filed suit in the Court of Common Pleas for Greenville County, South Carolina.

At the conclusion of a bench trial, the Honorable Edward B. Cottingham, Jr. found that NIC Textiles had agreed to assume New Swirl's debt and entered a judgment against NIC Textiles for the full amount.

In this action, Springs seeks to pierce the corporate veil and hold both Gasson and Santarlasci individually liable for the judgments and underlying debts of NIC Textiles. Springs alleges fraud and civil conspiracy.

Santarlasci takes the position that he is not subject to the personal jurisdiction of this court. As support for this assertion, Santarlasci first claims that he is protected by the "fiduciary shield" doctrine. Second, Santarlasci asserts that he has not had the minimum contacts with South Carolina necessary to support either specific jurisdiction or general jurisdiction pursuant to South Carolina's long-arm statute. Finally, Santarlasci states the exercise of personal jurisdiction in this situation would not comport with the requirements of fair play and substantial justice.

## A. *BURDEN OF PROOF*

When a defendant contests personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. *Umbro U.S.A. v. Goner,* 825 F.Supp. 738, 739 (D.S.C.1993). Before discovery has been completed, however, the plaintiff's allegations of jurisdictional facts are generally construed in its favor. *See Magic Toyota v. Southeast Toyota Distrib.,* 784 F.Supp. 306, 310 (D.S.C.1992); *Holland v. Hay,* 840 F.Supp. 1091, 1095 (E.D.Va. 1994). Consequently, to meet its burden, the plaintiff needs to make only a prima facie showing of jurisdiction. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). For the reasons that follow, the court finds that Springs has met its burden and that jurisdiction over Santarlasci is proper.

## B. *FIDUCIARY SHIELD DOCTRINE*

■ The fiduciary shield doctrine states that "the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity." *Bulova Watch Co. v. K. Hattori & Co., Ltd.,* 508 F.Supp. 1322, 1347 (E.D.N.Y.1981). Santarlasci claims that any acts that might subject him to personal jurisdiction in South Carolina were done in his corporate capacity. Therefore, according to Santarlasci, he is not subject to suit individually in South Carolina.

■ Contrary to Santarlasci's position, the United States Court of Appeals for the Fourth Circuit has not rejected the fiduciary shield doctrine. Oddly enough, the cases that express this holding are the same ones that Santarlasci cites in support of his position. In *Columbia Briargate Co. v. First Nat'l Bank,* 713 F.2d 1052 (4th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984), the Fourth Circuit addressed the fiduciary shield doctrine for the first time. Noting that the doctrine sprang from an interpretation of the New York long-arm statute, the court rejected the doctrine as having no basis in the law of due process. *See id.* at 1059–60. After an in-depth analy-

sis of the cases most often cited as support for the fiduciary shield doctrine, the court found that "not a one of them can be said to have been decided under the expansive language of the doctrine and the decision in each was rested upon the fact that the agent had not actually and individually participated in a tort in the forum state." *Id.* at 1061. Furthermore, the court found that the same result would have been reached in each instance under the traditional minimum contacts analysis required by due process. *Id.* Consequently, the court stated:

> [W]e are persuaded that when a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum under the applicable state long-arm statute as authorized by Rule 4(e), he is properly subject to the jurisdiction of the forum court, *provided the long-arm statute of the forum state is co-extensive with the full reach of due process.* On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.[1]

*Id.* at 1064. "Distinguishing those cases which have applied the fiduciary shield doctrine, the court concluded that it may have personal jurisdiction over an individual nonresident employee based on acts he performed on behalf of his employer under certain circumstances." *Magic Toyota,* 784 F.Supp. at 314.

■ In *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.,* 831 F.2d 522 (4th Cir.1987), the court reiterated that in *Columbia Briargate,* "this court held that the fiduciary shield doctrine is not available where the state's long-arm statute is 'co-extensive with the full reach of due process.'" *Id.* at 525. Considering the fact that South Carolina's long-arm statute has long been considered to extend to the limits of due process, *see, e.g., Triplett v. R.M. Wade & Co.,* 261 S.C. 419, 200 S.E.2d 375 (1973), Santarlasci's assertion that he is protected by the fiduciary shield doctrine is without merit.

## C. SPECIFIC JURISDICTION

Jurisdiction over a defendant that arises out of or is related to his activities in the forum state is called "specific jurisdiction." *Sheppard v. Jacksonville Marine Supply, Inc.,* 877 F.Supp. 260, 264 (D.S.C.1995). Springs alleges that Santarlasci and Gasson controlled NIC Textiles. They each owned one half of the corporation and served as its only two directors. Therefore, Springs asserts, both defendants were involved in the injury that is the subject of this suit.

South Carolina confers specific jurisdiction over a defendant pursuant to its long-arm statute. *Id.* Because South Carolina's long-arm statute extends to the limits of due process, "the test of amenability under the state law and under the constitutional test are identical." *Magic Toyota,* 784 F.Supp. at 312. The exercise of specific jurisdiction requires that the defendants have established minimum purposeful contacts with South Carolina. This requirement is satisfied if the state's long-arm statute authorizes jurisdiction. *See Pittsburgh Terminal,* 831 F.2d at 527.

South Carolina's long-arm statute provides in pertinent part: "a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's (a) transacting any business in this state [or] ... (c) commission of a tortious act in whole or in part in this state." S.C.Code Ann. § 36–2–803(1)(a), (c) (Law.Co-op.1976).

---

1. In his memoranda, Santarlasci places significant emphasis on this sentence. This emphasis is misguided because the court was referring to "an officer or employee of the *non-resident* corporation." Santarlasci is the director of a corporation that is domiciled in South Carolina and is, therefore, easily distinguished.

■ Springs has alleged and Santarlasci admits that he served as a director of New Swirl and NIC Textiles. (Def.'s Mem. Supp. Mot. Dismiss at 3.) He asserts, however, that any decision he allegedly made took place outside of South Carolina. Therefore, Santarlasci reasons that he has never personally transacted business in South Carolina with regard to Springs's claim. Assuming that Santarlasci did not make any business decisions for New Swirl or NIC Textiles while personally in South Carolina, the court finds that the long-arm statute still authorizes the exercise of personal jurisdiction over him.

In *Pittsburgh Terminal*, 831 F.2d at 527, the Fourth Circuit addressed a similar issue under West Virginia's long-arm statute. West Virginia's long-arm statute is substantially the same as that of South Carolina. *Compare* W.Va.Code § 56–3–33(a)(1) (1995) (conferring jurisdiction over non-residents "transacting any business in the state") *with* S.C.Code Ann. § 36–2–803(1)(a) (Law.Co-op.1976) (conferring jurisdiction over non-residents "transacting any business in the state"). The court stated that West Virginia law commits the affairs of the corporation to its board of directors. *Id.* (citing W.Va.Code § 31–1–95 (1995)). Once again, South Carolina has a code section that is similar to West Virginia's. *See* S.C.Code § 33–8–101 (Law.Co-op.1976). As the court found, wherever the directors may be when they make their decision regarding the affairs of the corporation, those decisions are given effect in the state in which the corporation is domiciled. *Pittsburgh Terminal*, 831 F.2d at 527. Therefore, "it is hardly possible to say with reason that [the directors] were not 'transacting any business' in the State of West Virginia." *Id.* By virtue of the two code sections, the court found that the nonresident directors of the West Virginia corporation were transacting business in the state and were amenable to jurisdiction. Pursuant to the same reasoning the Fourth Circuit used in *Pittsburgh Terminal*, this court finds that Santarlasci, as a nonresident director, has transacted business in South Carolina regarding the alleged injury and is amenable to jurisdiction.

■ The court also finds that even if Santarlasci has not transacted business in South Carolina, Springs has alleged sufficient facts to show that Santarlasci has committed a tort in whole or in part within South Carolina for purposes of jurisdiction. Santarlasci, once again, argues that any possible connection between him and the alleged torts occurred outside of the forum state.

Despite this contention, the exercise of personal jurisdiction is still proper. In *Magic Toyota*, the United States District Court for the District of South Carolina decided this issue. Discussing the holding in *Columbia Briargate*, the court stated that "[t]he Fourth Circuit held explicitly that an individual may be subject to personal jurisdiction in a particular forum if he commits a tort *in* the forum." *Magic Toyota*, 784 F.Supp. at 315 (emphasis added). "Less clear from *Columbia Briargate* is whether an individual defendant may also be subject to jurisdiction if he does not commit the wrong in the forum state but has reason to foresee responsibility in the forum state for wrongful acts committed outside the forum state." *Id.*

Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir.1980), and noting a passage that was favorably quoted in *Columbia Briargate*, the district court found that it was possible to hold an individual subject to personal jurisdiction despite the fact that he committed the wrongful act outside of South Carolina. "What is required is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury." *Magic Toyota*, 784 F.Supp. at 315. "Such direct personal involvement typically exists where the defendant agent is the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *Id.* (citing *Escude Cruz*, 619 F.2d at 907).

At this stage of the proceedings, Springs has alleged sufficient facts to show that Santarlasci was involved in the decision making which is causally related to its injury and that he was, at least in part, the guiding spirit behind the wrongful conduct. The court notes Santarlasci's own statement that he was the "point man" for the family of

corporations operating in South Carolina. (Santarlasci Dep. at 25–26, 29–30.) The court also finds it particularly compelling that Santarlasci and Gasson each owned fifty percent of NIC Textiles and were its only two directors. (Pl.'s Mem. Opp'n at 8.) Consequently, the South Carolina long-arm statute would also confer personal jurisdiction over Santarlasci for the commission of a tort in South Carolina.

■ As further support for its determination that the long-arm statute confers jurisdiction over Santarlasci, the court finds it would be proper to exercise jurisdiction based on Springs's allegations of conspiracy between Gasson and Santarlasci. "In certain instances, an out-of-state defendant may be subject to jurisdiction under a long-arm statute on the theory that his co-conspirator conducted activities in a particular state pursuant to the conspiracy." *Hammond v. Butler, Means, Evins & Brown,* 300 S.C. 458, 388 S.E.2d 796, 798, *cert. denied,* 498 U.S. 952, 111 S.Ct. 373, 112 L.Ed.2d 335 (1990). Springs has alleged facts sufficient to support jurisdiction over Santarlasci pursuant to the conspiracy with Gasson.

The court concludes, therefore, that Santarlasci established minimum purposeful contacts with South Carolina and that the long-arm statute authorizes jurisdiction over him.

### D.  *GENERAL JURISDICTION*

General jurisdiction is the means by which a court exercises personal jurisdiction over a defendant for activities that occur outside of the forum state. *Sheppard v. Jacksonville Marine Supply, Inc.,* 877 F.Supp. 260, 264 (D.S.C.1995). Section 36–2–802 of the South Carolina Code authorizes general jurisdiction over persons who do business or maintain a principal place of business in this state.

■ The court must first determine if the defendant has had substantial, extensive, and continuous contacts with the forum state. Unlike specific jurisdiction, "[c]onduct of single or isolated items of activities in a state ... are not enough to subject [the defendant] to [general jurisdiction]." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993). Simply put, the question before the

court regarding general jurisdiction is whether Santarlasci's contacts with South Carolina rise to the level necessary to justify suit against him on causes of action that are distinct from those activities. *Id.*

This issue presents a closer question for the court than did the exercise of specific jurisdiction. Even so, after reviewing the complaint, affidavits, exhibits, and supporting memoranda, the court, mindful that discovery is ongoing, finds that Springs has alleged sufficient facts to show that Santarlasci has substantial and continuous contacts with South Carolina. (*See* Pl.'s Mem. Opp'n at 9–11.) Therefore, the court finds that the exercise of general jurisdiction over Santarlasci would also be proper.

### E.  *FAIR PLAY/SUBSTANTIAL JUSTICE*

Having concluded that the exercise of specific jurisdiction and general jurisdiction are properly authorized, the court must determine whether such jurisdiction would offend traditional notions of fair play and substantial justice. *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 942 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1103, 130 L.Ed.2d 1070 (1995); *Pittsburgh Terminal* 831 F.2d 522, 525 (4th Cir.1987). Thus, courts may evaluate

> "the burden on the defendant", "the forum state's interest in adjudicating the dispute", "the plaintiff's interest in obtaining convenient and effective relief", "the interstate judicial system's interest in obtaining the most efficient resolution of controversies", and the "shared interest of the several States in furthering fundamental substantive social policies".... [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable.

*Id.* at 529 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985) (citations omitted)).

■ Considering the different factors listed above, the court finds that exercising jur-

isdiction over Santarlasci comports with the standards of fair play and substantial justice. South Carolina has a substantial interest in adjudicating disputes between domestic corporations and the director of another domestic corporation. Springs, as a South Carolina corporation, certainly has a substantial interest in seeking relief in the state in which it is domiciled and where it was injured. Efficiency also dictates that the court retain jurisdiction because, presumably, most of the facts surrounding the controversy are most easily discoverable in South Carolina. Finally, the burden on the defendant is slight. Considering Santarlasci's involvement with South Carolina corporations and the fact that he has already appeared in a South Carolina state court, there would be no substantial burden on him to litigate this action here. Therefore, the court finds that there are no compelling reasons that render jurisdiction unreasonable.

Accordingly, it is

**ORDERED** that Santarlasci's motion to dismiss is denied.

**IT IS SO ORDERED.**