**MAGIC HOUSE AB, Appellant,**

v.

**SHELTON BEVERAGE L.P. and Dianne Shelton d/b/a Shelton Beverage, Appellees.**

**No. 05–02–01048–CV.**

Court of Appeals of Texas, Dallas.

March 6, 2003.

8. Having sustained this point of error, we need not address the sixth point of error.

Kathryn K. Whipple, Dallas, for Appellant.

Theodore Carl Anderson, Kilgore &Kilgore, P.L.L.C., Dallas, for Appellee.

Before Justices BRIDGES, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion By Justice ROSENBERG (Assigned).

This is an appeal of an interlocutory order denying Magic House AB's (Magic House) special appearance in this case brought by Shelton Beverage L.P. and Dianne Shelton d/b/a Shelton Beverage (collectively, Shelton). In three issues, Magic House argues the special appearance should have been granted.[3] Because we conclude the trial court lacked both specific and general jurisdiction over Magic House, we reverse the trial court's order and render judgment dismissing Shelton's claims against Magic House for lack of jurisdiction.

---

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

3. Magic House's three issues are that its special appearance should have been granted because it had no minimum contacts with the State of Texas, the exercise of jurisdiction over Magic House by a Texas court would offend notions of fair play and substantial justice, and the cause of action did not arise out of or relate to the alleged contacts.

## FACTUAL AND PROCEDURAL BACKGROUND

Magic House is a Swedish corporation that manufactures the energy drinks Nice and Niagra (now Nexcite). On or about September 15, 2000, Magic House entered into a distribution agreement with Michigan Trading Post, Inc. (MTPI). This distribution agreement provided that MTPI would have the exclusive right to distribute the energy drinks in Florida, Texas, Nevada, California, and New York. The agreement later extended the distribution rights to the entire United States. MTPI granted Shelton exclusive distribution rights in Texas.

Subsequently, Shelton discovered that the beverage products were already widely available in Texas. The unauthorized products came from RLW Marketing, Inc. (RLW). RLW had a distribution agreement with MTPI for all of the United States except Texas. Shelton demanded that MTPI address the situation. Under the distribution agreement, Shelton sought relief against MTPI in arbitration. The arbitrator awarded Shelton a nominal award. According to Shelton, during the arbitration, Magic House transferred assets out of MTPI.

Shelton filed suit against Magic House, MTPI, RLW, their principals, and related entities.[4] Shelton's allegations against Magic House consisted of claims that it exercised that degree of control over MTPI to establish that MTPI was the alter ego of Magic House. Shelton asserted that Magic House fraudulently transferred assets from MTPI to Magic House to deprive Shelton of a legitimate arbitration award against MTPI. Shelton also alleged a civil conspiracy in the transfer of funds and sought a constructive trust over certain assets of Magic House.

Magic House filed a special appearance alleging that Texas courts did not have specific or general jurisdiction. The trial court denied the special appearance, and this interlocutory appeal ensued. No findings of fact or conclusions of law were filed with the record.

## Standard of Review and Applicable Law

In determining whether the trial court's ruling on a special appearance is correct, appellate courts review the trial court's factual findings for legal and factual sufficiency and review the trial court's legal conclusions *de novo*. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Id.* For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.*

Texas courts may exercise jurisdiction over a nonresident when (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–17.069 (Vernon 1997 & Supp.2003); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002), *cert. denied*, 71 U.S.L.W. 3445, —— U.S. ——, 123 S.Ct. 1271, 154 L.Ed.2d

---

**4.** The other defendants are Nordic Drinks Sweden, KB; Mats Selin; Tommy Lindblom; Rolf Witt; Karl Bengstsson; Loe Larsson; Lari Williams; Roger Williams; Tommy Jeter; Jet For Life, LLC; and Sunray International, Inc.

1025 (2003); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990); *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 674 (Tex.App.-Dallas 1993, writ dism'd by agr.). Our long-arm statute authorizes the exercise of jurisdiction over those who do business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Section 17.042 of the civil practice and remedies code defines "doing business" as (1) contracting by mail or otherwise with a Texas resident with performance either in whole or in part in this state; (2) commission of a tort in whole or in part in this state; or (3) recruitment of Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. *Id.* The broad language of the long-arm statute's "doing business" requirement allows the statute to reach as far as the federal constitution permits. *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806; *Schlobohm*, 784 S.W.2d at 357.

■■■ Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over a nonresident defendant. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). The due process test requires a plaintiff to show that the defendant has purposely established "minimum contacts" with the forum state and, if so, the plaintiff must show the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Schlobohm*, 784 S.W.2d at 357.

■■■ The "minimum contacts" analysis requires the court to determine whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its law. *See BMC Software*, 83 S.W.3d at 795; *Guardian Royal*, 815 S.W.2d at 226. The essential goal of the "purposeful availment" requirement is to protect a nonresident defendant from being haled into a jurisdiction based solely on random, fortuitous, or attenuated contacts. *Guardian Royal*, 815 S.W.2d at 226. Instead, a nonresident defendant's activity, whether it consists of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being haled into court there. *Schlobohm*, 784 S.W.2d at 357. The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant that create a substantial connection with the forum state. *Guardian Royal*, 815 S.W.2d at 226.

■■■ A defendant's contacts with a forum can give rise to either specific jurisdiction or general jurisdiction. *Id.* at 227–28; *Schlobohm*, 784 S.W.2d at 357. Specific jurisdiction exists when the nonresident defendant's activities have been "purposefully directed" to the forum and the litigation results from injuries arising out of or relating to those activities. *Guardian Royal*, 815 S.W.2d at 228. The minimum-contacts analysis for specific jurisdiction is somewhat narrow, focusing on the relationship among the defendant, the forum, and the litigation. *Id.; Schlobohm*, 784 S.W.2d at 357. "It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis." *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806. "Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established 'minimum contacts' with the forum state." *BMC Software*, 83 S.W.3d at 795; *see Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174 (contrasting act of "purposeful availment"

with "random," "fortuitous," or "attenuated" contacts). Conversely, the minimum-contacts analysis for general jurisdiction is broader and demands a showing of substantial activities in the forum state. *Guardian Royal,* 815 S.W.2d at 228; *Schlobohm,* 784 S.W.2d at 357.

 In addition to minimum contacts with the forum state, personal jurisdiction requires that the exercise of jurisdiction comport with traditional notions of fair play and substantial justice. *See BMC Software,* 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In determining whether the exercise of jurisdiction will offend traditional notions of fair play and substantial justice, the following factors are considered: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Guardian Royal,* 815 S.W.2d at 228. Consideration of the fair-play analysis is separate and distinct from the minimum-contacts issue. It is unlikely that the exercise of jurisdiction will fail the fair-play analysis because the minimum-contacts analysis encompasses so many considerations of fairness. *Schlobohm,* 784 S.W.2d at 357–58.

 The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *BMC Software,* 83 S.W.3d at 794. A defendant must negate all bases of jurisdiction even if there are no jurisdictional allegations in a plaintiff's petition. *Temperature Sys.,*

*Inc.,* 854 S.W.2d at 673. In such a case, proof that a defendant is a nonresident is sufficient to meet this burden. *Id.* However, proof of nonresidency is not enough when a plaintiff alleges jurisdictional facts. *Id.* Then, a defendant must also negate the jurisdictional facts alleged. *Id.*

**Analysis**

In the original petition, Shelton alleged that Magic House had done business in Texas by committing one or more torts in the State of Texas, and by recruiting Texas residents, directly or indirectly through an intermediary located in this state, to employ persons to sell products in Texas. The petition also asserted general jurisdiction under the claim that MTPI was the alter ego of Magic House. Shelton alleged that, because MTPI was doing business in Texas, Magic House was doing business in Texas. In the written response to the special appearance and at the hearing, Shelton, relying on *S.P.A. Giacomini v. Lamping,* 42 S.W.3d 265 (Tex.App.-Corpus Christi 2001, no pet.), and *CMMC v. Salinas,* 929 S.W.2d 435 (Tex.1996), asserted that the court had specific jurisdiction because the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state.

On appeal, Shelton also argues general jurisdiction exists based on the evidence of the sale of Magic House beverages in Texas on a continuing basis. Shelton alleges that the general jurisdiction evidence was admitted and tried by consent. *See Temperature Sys., Inc.,* 854 S.W.2d at 673–74. The record indicates that the hearing was limited to specific jurisdiction and alter ego issues, and Shelton's response to the special appearance only asserted specific jurisdiction. However, although the record does not reflect that the issue of general jurisdiction of Magic House itself was

presented or considered by the court at the hearing, the issue of general jurisdiction was raised in the pleadings. Accordingly, we will consider the jurisdiction and alter ego allegations included in the petition, evidence, and arguments at the hearing.

*Jurisdiction*

■ First, Shelton alleged that the trial court had jurisdiction over Magic House because Magic House committed a tort in the State of Texas. The allegations concerned the fraudulent transfer and civil conspiracy to fraudulently transfer assets of a Michigan corporation to a Swedish corporation. No facts were alleged that any of these acts occurred in Texas. The undisputed evidence is that none of Magic House's agents or officers had ever been in Texas and that Magic House had no bank accounts in Texas. In fact, no Magic House employee or representative had ever been to the United States on business related to the distribution of the beverages. All the dealings Magic House had concerning the products occurred in Sweden. The arbitration in which Shelton was notified of the transfer of assets occurred in Michigan. Accordingly, the mere allegation that a tort occurred in Texas does not support jurisdiction. *See BMC Software*, 83 S.W.3d at 796–97 (discussing whether nature of claims and elements arise from contacts occurring in forum state).

Next, Shelton alleged that the trial court had jurisdiction because Magic House recruited Texas residents, directly or indirectly through an intermediary located in this state, to employ persons to sell products in Texas. None of the allegations in the petition and none of the evidence support this allegation of jurisdiction. The petition alleges that Shelton went to Sweden to obtain the distributorship. MTPI, the entity that entered the distribution agreement with Shelton, was a Michigan

corporation. The evidence demonstrates that Magic House did not hire employees in this state and had no employees in Texas. Accordingly, the allegation of recruiting employees in Texas cannot support jurisdiction.

■ Finally, Shelton relies on a "minimum contacts" argument to enable the court to assert specific jurisdiction. Shelton testified that Magic House beverages have been shipped to and sold in Texas and that Magic House contemplated through its distribution agreement with MTPI that distribution would be in Texas. However, the evidence also shows that Magic House sold its products in Sweden and MTPI actually shipped them to Texas.

■ To meet the "minimum contacts" test the cause of action must arise out of or relate to the nonresident defendant's contact with Texas. *Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin*, 974 S.W.2d 918, 923 (Tex. App.-El Paso 1998, no pet.). The nonresident defendant's activities must have been "purposefully directed" to the forum and the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Id.* The fact that the beverages were imported to Texas under the distribution agreement is some evidence of purposeful contact with this state. *See Giacomini*, 42 S.W.3d at 275; *CMMC*, 929 S.W.2d at 439. In *Giacomini* and *CMMC*, minimum contacts required knowledge of a product's destination because the cause of action involved the product. Both *CMMC* and *Giacomini* were products liability actions. Here, the cause of action has nothing to do with the quality of the beverages. The injuries alleged are caused by the fraudulent transfer of MTPI assets. The cause of action does not relate to the beverages' presence in Texas to satisfy the minimum contacts requirements for specif-

ic jurisdiction. Moreover, for general jurisdiction to be exercised, the nonresident defendant's contacts in the forum state must be continuous and systematic. *BMC Software*, 83 S.W.3d at 797. The presence of the beverages in Texas does not show that Magic House conducted substantial activities in Texas because the evidence showed that MTPI, not Magic House, distributed the beverages. Therefore, Magic House's evidence negated Shelton's allegations of general jurisdiction. *See Am. Type Culture Collection, Inc.*, 83 S.W.3d at 808.

Because there is no evidence to support a trial court's conclusion that it had jurisdiction, we conclude that the trial court lacked jurisdiction over Magic House.

### Alter Ego

█ Shelton alleged that the trial court had general jurisdiction over Magic House because it is MTPI's alter ego. In response, Magic House contends that there is no evidence to support a determination that it is MTPI's alter ego.

█ Personal jurisdiction may exist over a nonresident defendant if the relationship between the foreign corporation and a corporation that does business in Texas is one that would allow the court to impute the corporation's "doing business" to the foreign corporation. *See BMC Software*, 83 S.W.3d at 798. The party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation. *Id.* This is because Texas law presumes that two separate corporations are indeed distinct entities. *Id.* "The general rule seems to be that courts will not because of stock ownership or interlocking directorship disregard the separate legal identities of corporations, unless such relationship is used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend crime." *Bell*

*Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 339 (Tex.1968) (citations omitted). The degree of control exercised by Magic House must be greater than that normally associated with common ownership and directorship. *See Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 419 (Tex.App.-Houston [14th Dist.] 1997, no writ). Thus, the alter ego doctrine would apply if MTPI is simply a conduit through which Magic House conducts its business. *See Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 771 (Tex. App.-San Antonio 1999, pet. dism'd w.o.j.), *disapproved on other grounds by BMC Software*, 83 S.W.3d at 794 n. 1.

Shelton contends that Magic House is the alter ego of MTPI, because she was told by MTPI employees that MTPI was the marketing arm of Magic House. In the arbitration hearing, Mats Selin, an employee of MTPI, testified that MTPI was an agent of Magic House and had the exclusive right to sell and market the product in the United States. Magic House denies any financial or directorship relationship between itself and MTPI. The distribution agreement confirms the right to distribute but does not show that Magic House had any control over MTPI. Jonas Jaenecke, the president of Magic House, testified that MTPI is Magic House's distributor in the United States, the method of distribution was MTPI's decision, and MTPI and Magic House shared no corporate board members, employees, or stockholders. He further testified that, under the distribution agreement, Magic House could approve or disapprove of advertising and promotional materials but had never reviewed any of these materials. Additionally, he testified that MTPI bought the beverages in Sweden and arranged for their shipment and distribution. None of this evidence indicates that MTPI was a conduit for Magic House to do business in this state.

In sum, the record does not reveal any evidence to support a trial court's conclusion that Magic House was MTPI's alter ego. We, therefore, conclude that the trial court did not have general jurisdiction over Magic House based on MTPI "doing business" in Texas.

## CONCLUSION

We hold that there is no evidence to support the trial court's implied finding that Magic House's contacts with Texas were sufficient to confer either specific or general jurisdiction. Accordingly, we reverse the trial court's order denying Magic House's special appearance and render judgment dismissing Shelton's claims against Magic House for want of jurisdiction.