Ronald A. RITTENMEYER, Solely in his Capacity as Plan Administrator of AFD Fund, The Post–Confirmation Estate of the Bankruptcy Cases of AmeriServe Food Distribution, Inc., and its Affiliates, and Not Individually, Appellant,

v.

Peter GRAUER, Benoit Jamar, and Leif F. Onarheim, Appellees.

No. 05–02–01866–CV.

Court of Appeals of Texas, Dallas.

April 17, 2003.

Rehearing Overruled May 20, 2003.

James E. Coleman, Jr., Fletcher L. Yarbrough, Jeffrey S. Levinger, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, for Appellant.

Rodney Acker, Jenkens & Gilchrist, P.C., Jay J. Madrid, Winstead Sechrest & Minick, P.C., Dallas, for Appellees.

Before Justices JAMES, BRIDGES, and RICHTER.

**OPINION**

Opinion By Justice JAMES.

Ronald A. Rittenmeyer, solely in his capacity as plan administrator of AFD Fund, the post-confirmation estate of the bankruptcy cases of AmeriServe Food Distribution, Inc., and its affiliates, and not individually, appeals the interlocutory orders of the trial court granting the special appearances of Peter Grauer, Benoit Jamar, and Leif Onarheim and dismissing Rittenmeyer's claims against them. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2003). Appellant brings a single issue on appeal: whether Texas courts may exercise specific personal jurisdiction

over nonresident directors of a foreign corporation headquartered in Texas for the directors' acts occurring outside Texas. We hold that a nonresident director of a foreign corporation is not subject to personal jurisdiction solely because the corporation has its headquarters in Texas. We also hold the trial court did not err in determining appellees lacked sufficient minimum contacts with Texas to permit the Texas courts to exercise personal jurisdiction over them. We affirm the trial court's orders sustaining appellees' special appearances and dismissing appellant's claims against them.

## FACTUAL BACKGROUND

Appellees are three of the eight directors of AmeriServe Food Distribution, Inc. (AmeriServe) and are not residents of the State of Texas. Grauer and Jamar are residents of Connecticut, and Onarheim is a resident of Norway. AmeriServe is incorporated in Delaware, its executive and management offices were in Wisconsin and Connecticut, and its operational headquarters were in Texas. On January 29, 1998, at a meeting in Miami, Florida, the board of directors of AmeriServe approved the merger of AmeriServe with a larger food distribution company, ProSource, Inc. Onarheim was not physically present at the Florida meeting but participated by telephone from Norway. AmeriServe's fortunes after the merger were not good, and on January 31, 2000, AmeriServe filed for bankruptcy.

Appellant was appointed the plan administrator of AmeriServe's post-confirmation estate, the purpose of which was to acquire funds, including through litigation, for distribution to AmeriServe's unpaid creditors. Appellant, on behalf of the post-confirma-

tion estate, brought suit in Dallas County Court at Law No. 2 against AmeriServe's parent companies, its officers and directors, and the companies that advised and financed the merger. Appellant alleged the directors, including appellees, breached their fiduciary duty by voting to approve the merger with ProSource. Appellant also alleged that Jamar and Grauer, who were executives of the company financing the merger,[1] and which earned millions of dollars from the merger, breached their fiduciary duties by not disclosing their conflict of interest to the other board members. Appellees filed special appearances, and the parties filed voluminous evidence in support of their positions.

On November 8, 2002, the trial court granted appellees' special appearances and dismissed appellant's claims against them. Appellant timely filed his notice of appeal on November 26, 2002. See TEX.R.APP. P. 26.1(b).

## SPECIAL APPEARANCE

■ A Texas court may exercise jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state guarantees of due process. See TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–045 (Vernon 1997 & Supp.2003); Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex.2002); Kelly Inv., Inc. v. Basic Capital Mgmt., Inc., 85 S.W.3d 371, 374 (Tex.App.-Dallas 2002, no pet.). Federal due process mandates that the defendant "purposefully avail" itself of the privilege of conducting activity within the forum state, thus invoking the benefits and protections of its laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–76,

---

1. This company had financed previous expansions by AmeriServe. As a condition of the financing, the company got to appoint two

directors who had authority to veto any decision by the remaining directors.

105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (random, fortuitous, or attenuated contacts insufficient). The defendant's conduct and connection with the state must be such that it could reasonably anticipate being sued in the forum state. *Id.* We determine whether (1) the nonresident defendant has purposefully established minimum contacts with Texas and, if so, (2) the exercise of jurisdiction comports with "notions of fair play and substantial justice." *Id.* The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A defendant is not subject to jurisdiction here if its Texas contacts are random, fortuitous, or attenuated. *Am. Type Culture Collection, Inc.,* 83 S.W.3d at 806.

■ A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Id.* For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts. *Id.* Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996). The defendant's purposeful conduct, not the unilateral activity of the plaintiff or others, must have caused the contact. *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868 (focus is on relationship among defendant, forum, and litigation); *Am. Type Culture Collection, Inc.,* 83 S.W.3d at 806.

### Burden of Proof

■ The plaintiff has the initial burden of pleading facts sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *See Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 633 (Tex.App.-Dallas 1993, writ denied). When a nonresident defendant challenges a trial court's exercise of personal jurisdiction through a special appearance, it carries the burden of negating all bases for personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985).

### Standard of Review

■ The exercise of personal jurisdiction requires the trial judge to resolve any factual disputes before applying the jurisdictional formula. *Hotel Partners v. Craig,* 993 S.W.2d 116, 120–21 (Tex.App.-Dallas 1994, pet. denied). On appeal, the appropriate standard of review of the trial court's order granting or denying a special appearance is a de novo review, applying the supreme court's jurisdictional formula. *See Craig,* 993 S.W.2d at 120. We apply a factual sufficiency of the evidence review to all of the evidence before the trial judge on the question of jurisdiction. *Craig,* 993 S.W.2d at 120; *KPMG Peat Marwick,* 847 S.W.2d at 632. Once all factual disputes are resolved we examine de novo whether the facts negate all bases for personal jurisdiction. *Am. Type Culture Collection, Inc.,* 83 S.W.3d at 806; *Craig,* 993 S.W.2d at 120.

■ When, as in this case, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). When the appellate record includes the reporter's and clerk's records,

these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appellate court. *Id.* For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Id.*

### Location of Corporate Headquarters

■ Appellant first asserts appellees are subject to the personal jurisdiction of Texas courts as a matter of law because AmeriServe had its headquarters in Texas at the time of the alleged breach of fiduciary duty, January 29, 1998. Because a finding that AmeriServe's headquarters were not in Texas on January 29, 1998 supports the trial court's orders, we must imply that finding unless it is not supported by more than a scintilla of evidence.

The record shows that before July 1997, AmeriServe's executive offices were in Wisconsin, and that its chief executive officer and chairman of the board, John Holten, had his office in Connecticut, which was where AmeriServe's parent company was based. In July 1997, AmeriServe acquired a significantly larger food distribution company, PepsiCo Food Service (PFS), which distributed food for the restaurant chains owned by PepsiCo, Inc. PFS had its main accounts processing staff of 300 to 400 people in Texas, but its marketing staff was located in California, Kansas, and Kentucky, with each location handling the marketing for one of the major chains. After acquiring PFS, AmeriServe fired PFS's executives and replaced them with AmeriServe's executives. However, the record contains evidence that the work of the executives was performed mostly in Wisconsin and Connecticut, with frequent visits to Dallas and other locations around the country.

ProSource had its headquarters in Miami. Press releases, letterhead, SEC filings, etc. indicate that by March 1998, the operational headquarters of AmeriServe, PFS, and ProSource were consolidated in Texas. However, the evidence is disputed whether AmeriServe's headquarters were in Texas on January 29, 1998. Kevin Rogan, the Senior Vice–President, Secretary, and General Counsel for AmeriServe from October 1997 to late 2000, testified in his affidavit that from the time he joined AmeriServe in October 1997 until its liquidation, its principal place of business and headquarters were in Texas.[2] Diana Moog, AmeriServe's Senior Vice–President–Finance and Treasurer from July 1997 to January 1998, and AmeriServe's Chief Financial Officer from January 1998 to November 2000, stated in her affidavit that in November or December 1997, AmeriServe's Wisconsin office had only a skeletal crew of five to ten employees, and the other employees had either moved to Texas or been let go. A January 30, 1998 press release from AmeriServe and ProSource announced the merger and stated, "AmeriServe *will continue to have its* headquarters in Dallas.... AmeriServe also has customer support offices in Wichita, KS, Louisville, KY, and Irvine, CA, in addition to its corporate headquarters in Dallas."

---

2. Appellant asserts in his brief that the location of AmeriServe's headquarters was established as being in Texas "when AmeriServe filed its Form 10–K with the SEC for the fiscal year ended December 27, 1997," which listed Dallas, Texas as the address of principal executive offices, and which was signed by appellees. Although the financial information in the Form 10–K was for the fiscal year ended December 27, 1997, appellees signed the Form on March 27, 1998, by which time the executive offices had been moved to Dallas. Thus, the Form 10–K is no evidence of where the headquarters were located on January 29, 1998, when the board approved the merger.

However, Holten, AmeriServe's chief executive officer and chairman of the board, testified in his affidavit:

Prior to December 1997, AmeriServe's strategic and capital markets headquarters were located in Greenwich, Connecticut, and its operational headquarters were located in Brookfield Wisconsin, although key management functions were also located in other states across the U.S. *Beginning* in or about December 1997, ... certain operational, financial and other management functions were *gradually* moved from Brookfield, Wisconsin to Dallas, Texas, although key management personnel and executive functions were also located in other states, including California, Kansas, Nebraska, Kentucky, etc.

(Emphasis added.) Additionally, Onarheim testified, "The operational headquarters was [sic] in Brookfield, Missouri [sic], but most of the—I would say, all the time till the Chapter 11 the strategic and financial decisions were taken or were developed in Greenwich, Connecticut." Jamar testified, "From my point of view the headquarters of the company were always Greenwich Connecticut...." Grauer testified, "As it relates to any of the AmeriServe activities, all of the decisionmaking and interaction with, on anything to do with AmeriServe, ProSource or anything else, was always done in Greenwich, Connecticut." Grauer also testified he expected any lawsuit related to his actions as a director to be filed in Connecticut, not Texas.

Thus, where the headquarters were actually located at the time of the alleged breach of fiduciary duty, January 29, 1998, was not clear from the evidence. Holten's and appellees' testimony suggests AmeriServe's headquarters were not located in Texas but were spread throughout the country, with its strategic headquarters in Connecticut, the operational headquarters in Wisconsin and in transition to Texas, and with other key management and executive functions in other states. Because appellant did not request, and the trial court did not file, findings of fact and conclusions of law, we must imply the finding that will support the trial court's order, in this case, that on January 29, 1998, the "headquarters" for AmeriServe were not located in Texas.

This implied finding is also supported by the January 29, 1998 Agreement and Plan of Merger of AmeriServe and ProSource. The agreement did not explicitly list the headquarters or principal place of business for AmeriServe, but it did list AmeriServe's address as being in Connecticut for the address to which all notices, requests, and other communications required by the agreement had to be sent. Accordingly, appellant's argument that appellees are, as a matter of law, subject to personal jurisdiction in Texas because they were directors of a corporation headquartered in Texas at the time of their allegedly wrongful actions lacks a factual basis.

 However, even if the evidence conclusively established that AmeriServe's headquarters on January 29, 1998 were in Texas, appellant's argument—that appellees are, as a matter of law, subject to the personal jurisdiction of the Texas courts because AmeriServe's headquarters were located in Texas on January 29, 1998—would still lack merit. Appellant relies principally on two cases in support of its argument that a state where a corporation's headquarters are located has personal jurisdiction over the corporation's directors for breach of fiduciary duty. *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir.1987), concerned a West Virginia corporation with its principal place of business in West

Virginia. *Id.* at 524. A merger involving the corporation occurred, and plaintiff, a stockholder in the corporation, brought a derivative action in West Virginia against the directors. *Id.* Two of the directors were not residents of West Virginia, and they asserted West Virginia could not assert personal jurisdiction over them. *Id.* Appellant asserts *Pittsburgh Terminal Corp.* held the fact that the corporation's principal place of business was in West Virginia gave the West Virginia courts personal jurisdiction over the directors. The Fourth Circuit said no such thing. The Fourth Circuit held the fact that the corporation was incorporated in West Virginia, and thus controlled by West Virginia law, made the actions of the directors subject to West Virginia law. *Id.* at 527. The location of the principal place of business was irrelevant to the Fourth Circuit's reasoning.

> Wherever the acts took place in soliciting the proxy or wherever the proxy was mailed from and to, it could have been given effect only in West Virginia by virtue of the law of West Virginia under which Mid Allegheny operated.... Each act which each of them [the nonresident directors] took with respect to this transaction was given effect in West Virginia by virtue of West Virginia law just as surely as if they had been in the principal office of the corporation in West Virginia, present and voting in person....
>
> Excellent reasons exist for allowing a State to assert jurisdiction over nonresident directors of domestic corporations. A chartering State has a strong, even compelling interest in providing a forum for redressing harm done by corporate fiduciaries, harm endured principally by a resident of that State, the corporation.... Given the high degree of regulation over corporate fiduciaries, the State's interest in providing a conve-

nient forum for a derivative suit charging misfeasance or nonfeasance of a director cannot be overemphasized.

*Id.* at 527–28. Applying *Pittsburgh Terminal Corp.* to this case, we would conclude appellees were deemed to have been transacting business in Delaware, the state of incorporation, and not Texas, by voting for the merger.

Appellant's other principal case, *International Harvester Co. v. Mann,* 460 So.2d 580 (Fla.Dist.Ct.App.1984), *overruled by Doe v. Thompson,* 620 So.2d 1004 (Fla. 1993), involved a Delaware corporation, Mann International, Inc. (MI) whose physical assets and operations were entirely within Florida. *Id.* at 582. The plaintiff and the defendants were the board of directors of the corporation; the defendants owned all the voting shares, and the plaintiff owned all the nonvoting shares. *Id.* at 581. The defendants held a meeting in Delaware without notifying the plaintiff, and they voted to dissolve the corporation. The plaintiff brought a derivative action and a personal breach of fiduciary duty action against the defendants in Florida. The defendants, who were Georgia residents, asserted the Florida courts lacked personal jurisdiction over them. The Florida court stated, "Although MI was formed as a corporation under the laws of Delaware, its physical assets and it operation as a business were solely within the state of Florida. Therefore, any injury to its inventory or operation as a business concern, as alleged must have occurred within Florida." *Id.* at 582. Unlike the facts of *International Harvester,* AmeriServe did not have all its assets and operations solely within the state of Texas; instead, AmeriServe's assets and operations were spread throughout the United States, Mexico, and Canada. *International Harvester* does not support appellant's argument. The other cases appellant cites are equally in-

applicable. *See DeCook v. Envtl. Sec. Corp.,* 258 N.W.2d 721, 728 (Iowa 1977) (nonresident directors of Iowa corporation subject to personal jurisdiction in Iowa); *Ellwein v. Sun–Rise, Inc.,* 295 Minn. 109, 203 N.W.2d 403, (1972) (nonresident directors of Minnesota corporation subject to personal jurisdiction in Minnesota); *Springs Indus. v. Gasson,* 923 F.Supp. 823, 826 & n. 1 (D.S.C.1996) (nonresident directors of South Carolina corporation subject to personal jurisdiction in South Carolina).

The mere fact that a Delaware corporation had its headquarters in Texas at the time of the allegedly wrongful act is not sufficient minimum contacts to give Texas courts personal jurisdiction over a nonresident director who commits a tort against the corporation. Appellant's argument to the contrary lacks merit.

### Location of Actions

▮▮▮▮▮▮ Appellant next asserts Texas courts have specific jurisdiction over appellees because they "purposefully availed" themselves of the privilege of acting in Texas by committing torts in Texas. The "tort" appellant alleges is breach of fiduciary duty. A breach of fiduciary duty by a corporate director's action of voting at a board meeting occurs in the state where the meeting was held. *Heil v. Morrison Knudsen Corp.,* 863 F.2d 546, 550–51 (7th Cir.1988). In this case, the meeting was held in Florida; thus, any breach of fiduciary duty by appellees was committed in Florida and not in Texas.

▮▮▮▮ Appellant next argues appellees are amenable to jurisdiction in Texas because they effectively transacted business in Texas by their decision to acquire ProSource. Appellant asserts Texas was "the focal point of all communications regarding corporate business," and that the directors had "purposefully chosen Texas as the con-

solidated headquarters of AmeriServe and ProSource." Thus, appellant argues, quoting *Pittsburgh Terminal Corp.,* appellees were " 'transacting business' in Texas 'just as surely as if they had been in the principal office of the corporation in [Texas], present and voting in person.' " *Pittsburgh Terminal Corp.,* 831 F.2d at 527 (bracketed material added by appellant). As discussed above, appellant misapplies *Pittsburgh Terminal Corp.* because the Fourth Circuit held the fact that the corporation was a West Virginia corporation made the director's actions occur in West Virginia; the location of the corporate headquarters was irrelevant to the Fourth Circuit's analysis. *Id.* at 527–28. Furthermore, the record shows the directors did not "purposefully [choose] Texas as the consolidated headquarters of AmeriServe and ProSource." Jamar's testimony indicates he was aware the headquarters were going to be consolidated in Texas, he listened to arguments before the decision about whether the headquarters should be moved to Miami, but he did not "have a position" on the issue. Appellant does not cite to the record any evidence showing the directors "purposefully" chose to consolidate AmeriServe's headquarters in Texas. Appellant also argues appellees "were responsible for the operational headquarters of AmeriServe being consolidated in Dallas when they made the conscious (and fatal) decision to approve the ProSource acquisition." This argument is not supported by the record, which shows the consolidation was underway before the vote on the ProSource merger took place. Also, appellees testified the focal point of communications regarding corporate business was Connecticut, not Texas. Appellant's argument lacks merit.

▮▮▮▮ Appellant next argues appellees are subject to Texas jurisdiction because they created "continuing obligations" with Texas by virtue of their service on Ameri-

Serve's board. Appellant again cites *Pittsburgh Terminal Corp.* in support of this argument. As discussed above, the focus of the Fourth Circuit was the fact that the corporation was incorporated in West Virginia, which gave the directors continuing obligations under West Virginia law. *Id.* at 529. Appellant also argues, quoting *Oakridge Holdings, Inc. v. Brukman,* 528 N.W.2d 274 (Minn.Ct.App.1995), "Because the directors thus voluntarily associated themselves with a Texas-based company, 'they cannot argue that they could not reasonably anticipate defending an action in [Texas] by their [Texas] corporation asserting acts harmful to the corporation.' " *Id.* at 277 (bracketed material added by appellant). The flaw in the argument is that AmeriServe is not a Texas corporation. *Oakridge Holdings* concerned a Minnesota corporation suing nonresident directors for breaches of fiduciary duty. The company's headquarters were in Arizona and later in California. *Id.* at 276. The directors resided in Arizona and California. Citing *Pittsburgh Terminal Corp.,* the Minnesota Court of Appeals held the nonresident directors were subject to the Minnesota courts' jurisdiction because they were directors of a Minnesota corporation. *Id.* at 277. We conclude *Oakridge Holdings* does not support appellant's argument. Applying *Pittsburgh Terminal Corp.* and *Oakridge Holdings* leads to the conclusion that appellees created continuing obligations in Delaware, not Texas, by virtue of their service on AmeriServe's board. Appellant's argument lacks merit.

### Location of Injury

■ Appellant also argues the record supports the Texas courts' exercise of specific jurisdiction over appellees because their action of voting to approve the Pro-Source merger, although occurring outside of Texas, produced injury within Texas. Appellant cites to *Springs Industries, Inc. v. Gasson,* where the federal district court stated a nonresident corporate agent could be subject to jurisdiction in the corporation's home state for an act occurring outside that state where the injury is caused by the agent's direct personal involvement and "the defendant agent is the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *Springs Indus., Inc.,* 923 F.Supp. at 827 (quoting *Magic Toyota v. SE Toyota Distribs., Inc.,* 784 F.Supp. 306, 315 (D.S.C.1992)). Thus, appellant appears to argue Jamar and Grauer are the "guiding spirit" and "central figure" behind the vote of the board of directors because they had the authority to veto any board decision. The record shows Jamar and Grauer rarely spent more than five to ten percent of their time on AmeriServe's business. The record also shows Jamar and Grauer were "extensively" and "fully" briefed on the ProSource merger by Holten. The trial court could conclude from the record that Holten, AmeriServe's chief executive officer and the sole stockholder of the company that owned the majority of AmeriServe,[3] was the true "guiding spirit" and "central figure" of the merger decision, and that Jamar and Grauer were neither "guiding spirit[s]" nor "central figure[s]" of the merger decision. Appellant's argument lacks merit.

In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Su-

---

3. In his petition, appellant sets out the chain of ownership leading to AmeriServe. At the top of the chain is Holten, who owns 100% of Holberg Inc., which owns 66% of Holberg Industries, Inc., which owns 92.9% of Nebco Evans Distributors, Inc., which owns 100% of Nebco Evans Holding Co., which owns 100% of AmeriServe. It is AmeriServe and its subsidiaries that actually conduct the food-distribution operations.

preme Court held the defendants' commission of a tort in Florida could give California courts specific jurisdiction over the defendants because their actions were expressly aimed at California and "they knew that the brunt of that injury would be felt by [the plaintiff] in the State in which she lives." *Id.* at 789–90, 104 S.Ct. 1482.[4] In that case, the plaintiff, a resident of California, sued two Florida journalists for libel based on an article they wrote for a nationwide newspaper. *Id.* at 785, 104 S.Ct. 1482. In this case, the record supports implied findings that appellees did not know "the brunt" of injury from the merger decision would be felt in Texas. The record shows that on December 31, 1999, AmeriServe:

> had approximately 8,300 full-time employees, approximately 600 of whom were employed in corporate support functions and approximately 7,700 of whom were warehouse, transportation, sales, and administrative staff at the distribution centers.

After the merger with ProSource, AmeriServe had more than seventy-five distribution centers in the United States, but it planned to reduce those to twenty-two distribution centers. As of the date it filed its petition in bankruptcy, AmeriServe leased 150,000 square feet of office space for its headquarters in Addison, Texas. AmeriServe also operated or was constructing forty-two distribution centers in twenty-four states as well as Mexico and Canada. Three of the distribution centers were in Texas, but New York and Illinois also had three distribution centers, and California had four. Most of the distribution centers were between 100,000 and 200,000 square feet in size. Onarheim tes-

tified that Texas was not the most important part of AmeriServe. Additionally, the trial court could conclude Holten, a Connecticut resident and the prime shareholder of the companies owning AmeriServe, suffered the "brunt" of the injury from AmeriServe's collapse. Based on this evidence, the trial court could make the implied finding that the "brunt" of the injury would not be felt in Texas.

Appellant also relies on *Guidry v. United States Tobacco Co.*, 188 F.3d 619 (5th Cir.1999), where the Fifth Circuit stated, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* at 628. Nothing in the record shows appellees intended for their vote to merge AmeriServe and ProSource to result in the financial collapse, bankruptcy, and liquidation of AmeriServe. Nor does any evidence show these consequences "were highly likely to follow from [appellees'] conduct." *Guidry* is not applicable.

Appellant also relies on *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.*, 66 Ill.App.3d 789, 23 Ill.Dec. 352, 383 N.E.2d 1379 (1978), for the proposition that "the injury" occurred in Texas. In that case, plaintiff and defendant were New York corporations in the business of manufacturing and selling fonts. *Id.* at 1382. Besides being incorporated in New York, both companies had their principal places of business and all their manufacturing facilities in the state of New York. The plaintiff sued the defendant for unlaw-

---

4. Appellant also cites *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482, 485 (1999), for the proposition, "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." That case, however, involved application of New York statute of limitations, not the long-arm statute or minimum contacts.

ful competition, alleging the defendant was inexpensively copying the plaintiff's fonts and selling them at a lower cost. *Id.* at 1382–83. The Illinois Appellate Court determined, "The injury to the plaintiff in this case is only to its pocketbook. It is alleging that it lost sales because of the defendants' misdeeds and because it lost sales, it lost profits. But the plaintiff's pocketbook is located in New York where it resides, i.e., has its major place of business." *Id.* at 1384. Thus, appellant argues, because AmeriServe "has its major place of business" in Texas, the injury occurred in Texas. However, although Texas may have been AmeriServe's corporate headquarters, the record supports an implied finding that Texas was not AmeriServe's "major place of business." The record shows that fewer than fourteen percent of AmeriServe's employees were in corporate support functions, and many of these employees may not have been located at the headquarters in Texas.[5] Even after the headquarters were moved to Texas, the record does not show where AmeriServe's "major place of business" was located, or even if it had one. Likewise, the record supports an implied finding that AmeriServe's "pocketbook" was not in Texas: Jamar testified AmeriServe's "accounting controls, that kind of thing was clearly in Dallas. But the financing function was clearly in Greenwich, Connecticut." All appellees testified that the financial information they received about AmeriServe came from Connecticut, not Texas. Appellant's argument lacks merit.

After reviewing the entire record, we conclude the record supports the trial court's implied finding that appellees' vote in Florida to approve the AmeriServe–

ProSource merger, two Delaware corporations with continent-wide operations, did not constitute sufficient purposeful availment of doing business in Texas or the performance of an act purposefully directed toward Texas or Texas residents. We conclude the trial court did not err in determining appellees lacked sufficient minimum contacts with Texas to give the Texas courts specific personal jurisdiction over them.

We resolve appellant's issue against him. We affirm the trial court's orders.

---

5. Holten testified in an affidavit that after the headquarters were moved to Texas, "key management personnel and executive func-

tions were also located in other states, including California, Kansas, Nebraska, Kentucky, etc."