### HAGERTY PARTNERS PARTNERSHIP, Appellant,

v.

### Robert L. LIVINGSTON and Terence McAuliffe, Appellees.

No. 05–03–00331–CV.

Court of Appeals of Texas, Dallas.

March 3, 2004.

Bruce W. Bowman, Jr., Eric Gordon Walraven and Stephanie Trow Bragg, Godwin Gruber, LLP, Dallas, for Appellant.

Collin D. Porterfield, The Porterfield Law Firm, Dallas, and Robert B. Bieck, Esq., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, for Appellee.

Before Justices BRIDGES, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice FRANCIS.

This is an interlocutory appeal from the trial court's order sustaining the special appearances of Robert L. Livingston and Terence McAuliffe and dismissing them from this lawsuit. Appellant Hagerty Partners Partnership contends the trial court should have asserted jurisdiction over Livingston and McAuliffe. We agree. Because we conclude appellees failed to negate all bases for jurisdiction and have sufficient contacts with Texas to support the exercise of specific jurisdiction, we reverse and remand this cause to the trial court for further proceedings.

On May 4, 2000, appellant, a Texas general partnership, invested $80,000 for 6,400 unregistered units of Media Fusion, L.L.C. based upon Media Fusion's claims that it had developed the technology to transmit voice, video, and data over electrical power lines. Media Fusion is a Texas limited liability company that was founded by Luke Stewart and Ed Blair in February 1998. Media Fusion's principal office/headquarters is located in Dallas County. Livingston and McAuliffe are non-employee members of Media Fusion's board of managers who reside outside of Texas (The parties agree the board of managers is analogous to the board of directors of a corporation).

Appellant filed this lawsuit against Media Fusion, Livingston, McAuliffe, and others after discovering Media Fusion's technology was not viable and Stewart and Blair apparently misappropriated corporate funds for their personal use. Appellant asserted Livingston and McAuliffe were liable as "control persons" or "aiders" under the Texas Securities Act, be-cause as managers, they were responsible for all misrepresentations and omissions made to induce appellant's purchase. Appellant also asserted Livingston and McAuliffe were negligent as Media Fusion managers in failing to: (1) exercise reasonable care in performing due diligence with respect to the statements made by Stewart and others about Media Fusion's technology, (2) investigate Stewart's background or qualifications, and (3) oversee the Media Fusion's finances and use of investor money.

Livingston and McAuliffe filed special appearances contesting the trial court's jurisdiction over them asserting they had no contacts with Texas and had only been to Texas on Media Fusion business for one day. Appellant responded that Livingston and McAuliffe, managers of a Texas limited liability company, committed acts or failed to fulfill duties imposed upon them by Texas law, resulting in harm to appellant, a Texas resident. The trial court granted Livingston and McAuliffe's special appearances. Appellant brought this interlocutory appeal.

A Texas court may exercise jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal due process guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990). A review of the broad language contained within the Texas long-arm statute reveals the exercise of jurisdiction over a nonresident defendant is permissible so long as it complies with the limitations of federal due process. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). In accordance with these federal due process requirements, we must determine whether the nonresident defendant has purposefully established minimum contacts with Texas and, if so, whether exercise of that jurisdiction

comports with notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "minimum contacts" analysis requires us to determine whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its law. *See Magic House AB v. Shelton Beverage, L.P,* 99 S.W.3d 903, 908 (Tex.App.-Dallas 2003, no pet.).

■■■ A defendant's contacts with the forum state may give rise to either general or specific jurisdiction. *Rittenmeyer v. Grauer,* 104 S.W.3d 725, 729 (Tex.App.-Dallas 2003, no pet.). In the case before us, we limit our review to the issue of specific jurisdiction because appellant has not asserted Livingston or McAuliffe are subject to Texas's general jurisdiction. Specific jurisdiction exists if the litigation results from injuries arising out of or relating to appellees' activities "purposely directed" to the forum state and the litigation results from injuries arising out of or relating to those activities. *See Magic House,* 99 S.W.3d at 908. It is unnecessary for appellees to actually enter Texas so long as they have purposefully directed activities toward this State and the litigation arises from those activities. *See Pittsburgh Terminal Corp. v. Mid Allegheny Corp.,* 831 F.2d 522, 525 (4th Cir.1987). Appellees' activities, whether they consist of acts within the forum state or conduct outside the forum, must justify the conclusion that they should reasonably anticipate being haled into a Texas Court. *See Schlobohm,* 784 S.W.2d at 357. The minimum-contacts analysis for specific jurisdiction, being somewhat narrow, focuses on the relationship between the defendant, the forum, and the litigation. *See Magic House,* 99 S.W.3d at 908. "It is the quality

and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis." *See Schlobohm,* 784 S.W.2d at 357. "Although not determinative, foreseeability is an important consideration in deciding whether the nonresident has purposefully established 'minimum contacts' with the forum state." *See BMC Software Belgium N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002).

■■■ The plaintiff bears the initial burden of sufficient pleading to bring a nonresident defendant within the provisions of the long-arm statute. *Id.* at 795. A defendant challenging the court's exercise of personal jurisdiction must negate all jurisdictional bases alleged. *Id.* Whether a court may exercise personal jurisdiction over a nonresident defendant is ultimately a question of law that often requires the resolution of factual questions as well. *See id.* at 794. We review the trial court's fact findings for legal and factual sufficiency, but conduct a de novo review of its legal conclusions. *Id.* Where, as here, there are no findings of fact and conclusions of law, we imply all necessary facts from the record to support the trial court's order. *Id.* at 795.

■■■ The record shows that Livingston was a Media Fusion board member from March 1999 through February 2001. McAuliffe was unanimously approved for membership on the board on October 13, 1999 but apparently discontinued his role with the company in the fall of 2000. Appellees attended several board meetings including one held in Dallas on March 13, 2000, less than two months before appellant invested in Media Fusion. At the Dallas meeting, each appellee was paid $50,000 for his board service and reimbursed for traveling expenses. At the March 13 meeting, the board held a comprehensive discussion on the corporation's

accounting procedure and heard a presentation about several companies that expressed interest in investing in the company. The board was also updated on a previously authorized Regulation D Private Placement offering. Because appellees did not negate all jurisdictional bases alleged, the trial court erred in granting the special appearances.

Appellant's claims are based on Livingston and McAuliffe's role as managers of a Texas company with its principal office in Dallas, Texas. Specifically, appellant has alleged "control person" and "aider" liability under the Texas Securities Act. *See* TEX.REV.CIV. STAT. ANN. art. 581–33F(1) & F(2) (Vernon Supp.2003). Appellant has also alleged appellees' conduct as managers was negligent. Appellants do not deny they exercised control over Media Fusion or were involved in the securities offering resulting in appellant's purchase its units of the company. To the extent appellees assert there is no evidence in the record that they played any role in soliciting any investment for Media Fusion or promoting any sale of Media Fusion securities, or had any involvement in Media Fusion's solicitation or sale of securities, we note that it was appellees' burden to present evidence negating these jurisdictional facts. *See Marchand,* 83 S.W.3d at 793. We recently held that a defendant is a control person under the Act if it exercised control over the operations of the corporation in general and had the power to control the specific transaction or activity upon which the primary violation is predicated. *Barnes v. SWS Fin. Serv., Inc.,* 97 S.W.3d 759, 764 (Tex.App.-Dallas 2003, no pet.).

Based on the undisputed jurisdictional facts before us, we conclude appellees have the requisite minimum contacts with Texas to have reasonably anticipated being called into a Texas court for causes of action relating to or arising out of their action or inaction as Media Fusion managers. Appellees were paid managers of Media Fusion (a Texas company headquartered in Texas) at the time appellant (a Texas partnership) purchased its unregistered securities. They attended a board meeting in Texas just two months before appellant's purchase and discussed the corporate accounting procedure, outside corporate investments in Media Fusion, and a Regulation D Private Placement offering.

Having concluded appellees purposefully established minimum contacts with Texas, we must next determine whether the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *See Rudzewicz,* 471 U.S. at 474–76, 105 S.Ct. 2174; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex.1990). In analyzing this issue, we examine the following five factors: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial systems interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal,* 815 S.W.2d at 228.

Although it may be inconvenient for appellees to litigate this matter in Texas, all other factors weigh in favor of a Texas court's exercise of jurisdiction. Appellant and Texas have a strong interest in having the case heard in this State. The lawsuit involves the sale of securities in a Texas company and allegations that its managers committed wrongful acts in the execution of their duties. The company is not only organized under Texas laws, but has a Texas headquarters. Appellant, a Texas resident, purchased the securities in question in Texas. The alleged misrepresentations and omissions accompanying appel-

lant's purchase were also apparently made in Texas. Finally, resolution of this matter will likely depend on the application of Texas law. The interstate judicial system's interest in efficiency and furthering social policies also weigh in favor of exercising jurisdiction over appellees. Appellant and the majority of the remaining defendants reside in Texas and this case is currently pending before a Texas court. Any applicable social policies may be implemented by a Texas court. All things considered, we conclude it does not offend traditional notions of fair play and substantial justice to subject appellees to jurisdiction in Texas.

Because appellees have failed to negate all bases for jurisdiction and the undisputed jurisdictional facts demonstrate appellees purposefully established the requisite minimum contacts with Texas to support the exercise of specific jurisdiction which does not offend traditional notions of fair play, the trial court erred in granting Livingston and McAuliffe's special appearances. We reverse the trial court's order and remand this matter to the trial court for further proceedings.